UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD ROWE                                    CIVIL ACTION

VERSUS                                         NO. 19-863-SDD-SDJ

PRIMERICA LIFE INSURANCE
COMPANY, et al.

### ORDER DENYING MOTION TO REMAND

Before the Court is a Motion for Remand filed on January 8, 2020, by Plaintiff Donald Rowe (R. Doc. 12) that seeks to have this matter remanded to the 19th Judicial District Court ("JDC") for the Parish of East Baton Rouge, Louisiana. Defendants Primerica Life Insurance Company and The Guardian Life Insurance Company of America both oppose remand, filing oppositions to Plaintiff's Motion on January 29, 2020. (R. Docs. 17, 18).

For the reasons that follow, Plaintiff's Motion for Remand is **DENIED** and, further, Plaintiff's claims against Defendants Chris Dantin and Chris Dantin, Inc., are **DISMISSED WITHOUT PREJUDICE**.[1]

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 2019, Plaintiff filed a Petition in the 19th JDC against Primerica Life Insurance Company ("Primerica"), The Guardian Life Insurance Company of America ("Guardian"), Chris Dantin, Inc. ("CDI"), and Chris Dantin ("Dantin").[2] In his Petition, Plaintiff alleges that on November 1, 2002, he purchased a $500,000 life insurance policy from Guardian

---

[1] This Court and other courts within the Fifth Circuit "have summarily dismissed improperly joined defendants." *Williams v. Syngenta Corp.*, No. 15-644, 2016 WL 807762, at *10 (M.D. La. Feb. 3, 2016). *See also Lapeyrouse v. State Farm Fire & Cas. Co.*, No. 14-52, 2014 WL 4373273, at *7-8 (M.D. La. Sept. 3, 2014); *Ellis v. Ethicon, Inc.*, No. 09-949, 2010 WL 2998602, at *2 (M.D. La. Jul. 26, 2010); *Butler v. La. State Univ. Health Sciences Ctr.*, No. 12-1838, 2012 WL 7784402, at *5 (W.D. La. Nov. 19, 2012), *report and recommendation adopted*, 2013 WL 1180873 (W.D. La. Mar. 20, 2013).
[2] R. Doc. 1-2 at 1 ¶ 1.

with his son, Cory Rowe, as the insured.[3] Plaintiff purchased the policy through the agency CDI, and Dantin was the agent who sold Plaintiff the policy.[4] As alleged by Plaintiff, he was to be both the beneficiary and owner of this policy but was named only as the beneficiary.[5] Dantin's contract with Guardian ceased on June 10, 2011.[6]

On October 25, 2005, Plaintiff purchased a second policy insuring his son, this time from Primerica.[7] For this policy, which also was for $500,000, Plaintiff was named as both the owner and beneficiary.[8] However, on September 28, 2018, Plaintiff received a notice from Primerica that the premium on the policy had not been paid.[9] Plaintiff asserts that he then timely mailed in the full quarterly payment to reinstate the policy.[10] Plaintiff further asserts that, unbeknownst to him, the premium on the policy with Guardian similarly had not been paid.[11] Per Plaintiff, because he was not listed as owner of the policy, he did not receive a notice regarding the delinquent premium payment; the notification of termination was mailed to his son, Cory Rowe.[12]

On November 11, 2018, Plaintiff's son Cory Rowe died.[13] Following Cory Rowe's death, Guardian refused to pay Plaintiff the policy benefits, claiming that the policy had been cancelled.[14] Similarly, Primerica informed Plaintiff it would not pay Plaintiff the benefits under its policy and

---

[3] R. Doc. 1-2 at 1 ¶ 2.
[4] *Id.* Plaintiff also alleges that "[s]ometime in the year 2018, based on the belief of Donald Rowe, it appears that the agent on the Guardian policy changed to 'Iron Horse Financial' with named agent Ellen Alderman." R. Doc. 12-1 at 3. Neither Iron Horse Financial nor Ellen Alderman are parties to this action.
[5] R. Doc. 1-2 at 1 ¶ 3.
[6] R. Doc. 18 at 11.
[7] R. Doc. 1-2 at 1 ¶ 4.
[8] *Id.*
[9] *Id.* at 1-2 ¶ 5.
[10] *Id.*
[11] *Id.* at 2 ¶ 6.
[12] *Id.*; R. Doc. 12-1 at 4.
[13] R. Doc. 1-2 at 2 ¶ 8.
[14] *Id.* at 2 ¶ 9.

had refunded to Plaintiff the premium payment he made to Primerica after he received the policy cancellation notice.[15]

In response, Plaintiff filed this litigation in state court on November 12, 2019, seeking payment of the policy benefits under both the Guardian and Primerica policies, in addition to penalties and interest.[16] Subsequently, on December 13, 2019, Guardian, with the consent of Primerica, removed this matter, asserting federal subject matter jurisdiction under 28 U.S.C. § 1332.[17] Guardian claims that because Dantin and CDI, who are non-diverse Defendants, were improperly joined in this action, there is complete diversity of parties and the jurisdictional amount is met.[18]

Plaintiff, on January 8, 2020, filed the instant Motion to Remand, disputing the contention that Dantin and CDI were improperly joined.[19] On January 29, 2020, both Primerica and Guardian filed oppositions to Plaintiff's Motion to Remand.[20]

---

[15] *Id.* at 2 ¶ 11.
[16] *Id.* at 2-3.
[17] R. Doc. 1 at 5-6, 7 ¶¶ 16-19, 26.
[18] *Id.* at 6, 7 ¶¶ 20, 25-26. The citizenship of the parties is not in dispute. Plaintiff is a domiciliary of Louisiana and, therefore, is a citizen of Louisiana. R. Doc. 1 at 5 ¶ 16. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007) ("In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship."). Guardian is a "mutual life insurance company incorporated in the State of New York," with its principal place of business in New York. R. Doc. 1 at 5 ¶ 17. Guardian, therefore, is a citizen of New York. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"). Similarly, Primerica is "a company incorporated and existing under the laws of the State of Tennessee with its principal place of business in Georgia." R. Doc. 1 at 6 ¶ 18. Thus, Primerica is a citizen of Tennessee and Georgia. Dantin was a Louisiana domiciliary, and DCI was incorporated in the State of Louisiana with its principal place of business in Louisiana. R. Doc. 1 at 6 ¶ 19. As such, both Dantin and DCI, like Plaintiff, are citizens of Louisiana.
[19] R. Doc. 12.
[20] R. Doc. 17 (Primerica) and R. Doc. 18 (Guardian).

Document Number: 61741

## II.    LAW AND ANALYSIS

### A.  Applicable Law

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States," and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)-(a)(1).  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.  *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").  "It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation."  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

The removal statute, 28 U.S.C. § 1441, is strictly construed, and any doubt as to the propriety of removal should be resolved in favor of remand.  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).  The removing party has the burden of proving federal jurisdiction and, if challenged, that the removal was procedurally proper.  *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) ("party seeking to invoke federal diversity jurisdiction bears the burden of [proof]").

"The Fifth Circuit has recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Johnson v. Packaging Corp. of Am.*, No. 18-613, 2019 WL 1271053, at *9 (M.D. La. Feb. 27, 2019) (quoting *Smallwood v. Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (internal quotations omitted)).  For the second way, "the test is

whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which, stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* (quoting *Smallwood*, 385 F.3d at 573 (internal quotations omitted)). The Fifth Circuit further clarified this standard, finding that a court must determine "whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

The burden of persuasion on the defendant who asserts improper joinder is a heavy one. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Even though this burden rests with the removing party, a plaintiff may not rest upon mere allegations in his or her pleadings. *Ross*, 344 F.3d at 462. To determine the validity of an improper joinder claim, a court "may pierce the pleadings and consider summary judgment-type evidence." *Id.* at 462-63 (quoting *Travis*, 326 F.3d at 648-49) (internal quotations omitted)). A court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. Further, a court must resolve all factual disputes in favor of the plaintiff. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). A court also must resolve all ambiguities of state law in favor of the plaintiff. *Ross*, 344 F.3d at 463. "Since the purpose of the inquiry is to determine whether the in-state defendant was properly joined, the focus must be on the joinder, not the merits of the plaintiff's case. *Sims v. Hanover Ins. Co.*, No. 07-542, 2007 WL 3355129, at *2 (M.D. La. Nov. 13, 2007) (citing *Smallwood*, 385 F.3d at 572).

### B. Arguments of the Parties

Plaintiff, in support of remand, counters that Dantin and DCI, non-diverse defendants, are

not improperly joined parties. In his Motion to Remand, Plaintiff claims that he held the policy with Guardian for over 17 years, paying the policy premiums "via bank autodrafts."[21] Plaintiff also claims that he told Dantin and CDI "over and over again" that he was to be listed as the owner of the Guardian policy and did not know prior to his son's death that he was not the listed owner of the policy.[22] As alleged by Plaintiff, despite having the Guardian policy for over 17 years, "with renewals each year from the agents Chris Dantin and Dantin, Inc.," neither Dantin nor anyone from CDI notified him that his policies "were in danger of lapsing or had lapsed."[23] Per Plaintiff, these annual renewals by Plaintiff through Dantin and DCI defeat Defendants' peremption argument.[24]

In response, and in support of removal, Guardian argues that all of Plaintiff's claims against Dantin and CDI, the non-diverse defendants, are perempted under La. R.S. 9:5606, because both the one- and three-year peremptive periods of La. R.S. 9:5606 have run.[25] The policy was purchased in 2002, and even accepting Plaintiff's allegation that it was not until 2018, when he was denied policy benefits, that he discovered Dantin's alleged failure to list him as policy owner, the litigation was filed far outside the three-year peremptive window set forth in the statute.[26] As explained by Guardian:

> Any purported claim against Mr. Dantin for allegedly failing to name Plaintiff as policy owner arose when the Policy was procured on September 29, 2002. Having failed to bring suit within 3 years of the alleged misconduct, Plaintiff's claims perempted. Alternatively, Plaintiff's claims perempted on November 12, 2003 within one year of Plaintiff's receipt of a copy of the Policy on November 12, 2002 as he had notice at that time that Cory Rowe, not he, was the Policy owner. At the latest, Plaintiff's action perempted by June 10, 2014, three years following the cessation of Mr. Dantin's Guardian contract on June 10, 2011. Beyond that date, Mr. Dantin did not speak to Plaintiff or Cory Rowe regarding the Policy.[27]

---

[21] R. Doc. 12-1 at 3.
[22] *Id.* at 3-4.
[23] *Id.* at 5.
[24] *Id.* at 9-12.
[25] R. Doc. 18 at 10-11.
[26] *See id.*
[27] *Id.*

Guardian further argues that not only was the Guardian policy not subject to annual renewal, but also that Dantin ended his association with Guardian by June 10, 2011, so there were no communications, and therefore no separate and distinct acts, with Plaintiff regarding his Guardian policy after that date.[28]

Similarly, Primerica, too, argues that Plaintiff's claims against Dantin and CDI are perempted and that Guardian properly removed the matter based on improper joinder.[29] Primerica further asserts that any attempt to add additional defendants, *i.e.*, Iron Horse Financial, cannot defeat this Court's diversity jurisdiction, as any such claims would be prescribed or "extinguished by peremption."[30] Primerica also claims that there are no allegations that Primerica "has or had any relationship with or connection to the Dantins" or that Primerica "has any relationship with or connection to Guardian Life."[31] As such, it argues that it "was misjoined in this action" and notes that "in twenty-one pages of remand briefing, plaintiff's entire argument is directed at the alleged acts or omissions of Guardian Life and its alleged agents, the Dantins."[32]

### C. Improper Joinder of Dantin and CDI

In Louisiana, claims against insurance agents are "subject to a one-year peremptive period from the date of discovery of the alleged act, omission, or neglect, and a three-year peremptive period from the date of the alleged act, omission, or neglect." *Lapeyrouse v. State Farm Fire & Cas. Co.*, No. 14-52, 2014 WL 4373273, at *3-4 (M.D. La. Sept. 3, 2014) (citing La. R.S. 9:5606(A)). As set forth in La. R.S. 9:5606(A):

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or

---

[28] R. Doc. 18 at 16-17.
[29] R. Doc. 17 at 4.
[30] *Id.* at 7.
[31] *Id.* at 3-4.
[32] *Id.* at 4. Primerica subsequently filed a Motion to Sever Due to Misjoinder (R. Doc. 16), which remains pending before this Court.

> otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Thus, La. R.S. 9:5606 contains a clear peremptive deadline, which "may not be renounced, interrupted, or suspended."[33]

A review of the allegations in Plaintiff's Petition and the record at the time of removal demonstrates that Plaintiff has not alleged a valid claim against Dantin or CDI.[34] In his Petition, Plaintiff raises the following allegations against Dantin and CDI:

> Plaintiff was to be named the beneficiary and the owner of this policy however through the negligence of Defendants Chris Dantin, Inc. and Chris Dantin Plaintiff was not named owner.
> * * * *
> Either there was no valid cancellation of the policy due to lack of notice to Plaintiff or Chris Dantin, Inc. and Chris Dantin are liable for damages in the amount of the policy benefit for not properly listing Plaintiff as policy owner.[35]

Plaintiff purchased the Guardian policy on November 1, 2002, when the alleged negligent act of failing to list him as owner of the policy occurred.[36] Applying the three-year peremptive period of La. R.S. 9:5606 here, this litigation, filed in 2019, was filed over a decade after the time limit for bringing such a claim had expired. As such, any claims against Dantin and/or CDI arising out of the initial procurement of the policy in 2002 are peremped under La. R.S. 9:5606(A).

---

[33] According to La. R.S. 9:5606(D), "[t]he one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended."

[34] The Court notes that while Plaintiff asserts only a cause of action for negligence against Dantin and CDI, in his Motion to Remand, he claims he has stated cognizable claims of breach of fiduciary duty, breach of contract, detrimental reliance, failure to use reasonable diligence in procuring insurance, in addition to a claim of negligence, against Dantin and CDI. R. Doc. 12-1 at 12-17. However, only claims asserted at the time of removal can be considered. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (refusing "to determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint").

[35] R. Doc. 1-2 at 1, 2 ¶¶ 3, 10.

[36] *Id.* at 1 ¶ 2.

Document Number: 61741

However, as set forth above, Plaintiff asserts that the annual renewal of his policy with Guardian serves to defeat the peremptive period of La. R.S. 9:5606. "Generally, subsequent renewals of insurance policies 'do not operate to restart peremption'." *White v. Allstate Ins. Co.*, 513 F.Supp.2d 674, 681 (E.D. La. 2007) (quoting *Dobson v. Allstate Ins. Co.*, No. 06-252, 2006 WL 2078423, at *8 (E.D. La. Jul. 21, 2006). "In order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages." *Id.* (quoting *Biggers v. Allstate Ins. Co.*, 04-282 (La. App. 5 Cir. 10/26/04), 886 So.2d 1179, 1182); *see also Sonnier v. La. Farm Bureau Mut. Ins. Co.*, 2005-1006 (La. App. 3 Cir. 3/1/06), 924 So.2d 419, 422, *writ denied*, 2006-0704 (La. 5/26/06), 930 So. 2d 33 (a renewal may constitute a separate act if an insured requests specific coverage at the time of renewal). "The inquiry is whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procurement." *White*, 513 F.Supp.2d at 681 (quoting *Gomez v. Allstate Ins. Co.*, No. 06-8274, 2007 WL 1166150, at *2 (E.D. La. Apr. 17, 2007)).

Here, Plaintiff's Petition is devoid of any factual allegation even referencing any annual renewals or communication, much less indicating that Dantin and/or CDI committed a separate and distinct act of negligence during any of the renewal periods. *See Sims*, 2007 WL 3355129, at *3 (finding claims perempted where plaintiff's petition did not contain factual allegations that the agent or agency committed a separate or distinct act during renewal). In an affidavit attached to his Motion for Remand, Plaintiff does make the following general allegation: "I spoke to Chris Dantin several times throughout the years and this policy would renew each year with automatic payments coming out of my checking account." [37] This, however, does not rise to the level of

---

[37] D. Rowe affidavit, R. Doc. 12-3 at 2 ¶ 6.

Document Number: 61741

alleging that any said renewal, should such have occurred, constituted an act separate from the initial policy procurement, particularly in light of Plaintiff's assertion that he paid for the policy through an automatic bank draft, which indicates to the Court continual coverage without change. Additionally, per Guardian, Plaintiff's policy was not subject to annual renewal.[38]

Similarly, the cases cited by Plaintiff in support of his assertion that annual renewals can, in certain circumstances, restart the peremption clock, are inapposite here, as the claims therein all either were timely filed or involve clear annual contact between the agent and insured prior to annual renewal, unlike here. *See Belmont Commons, L.L.C. v. Axis Surplus Ins. Co.*, 569 F.Supp.2d 637, 642-43 (E.D La. 2008) (in a dispute involving only the one-year peremptive period of La. R.S. 9:5606, court found that suit was timely because it was filed within one year of discovery of the alleged act, omission or neglect); *S. Athletic Club, LLC v. Hanover Inc. Co.*, No. 06-2605, 2006 WL 2583406, at *3 (E.D. La. Sept. 6, 2006) (finding claim against insurance agent was not perempted under La. R.S. 9:5606 because policy renewal could have been a separate and distinct act from the original purchase where, every year, prior to the renewal date, insured discussed property value with agent and the policy limits were increased to provide additional coverage); *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*, 47,337 (La. App. 2 Cir. 9/19/12), 104 So.3d 524, 531 (finding claims not perempted under La. R.S. 9:5606 because each year, prior to policy renewal date, plaintiff and agent discussed plaintiff's insurance coverage during which discussions plaintiff said he wanted to insure his property to the "maximum extent," which each constituted a separate and distinct act).

Finally, as alleged by Defendants, Dantin's contract with Guardian ended in June 2011.

---

[38] R. Doc. 18 at 17 ("Contrary to Plaintiff's assertion, the Policy was not subject to annual renewal. As evidenced by its terms, the Policy remained in force at the same premium level for a period of 20 years as long as policy premiums were timely remitted.").

Document Number: 61741

Thus, any contact Plaintiff had with Dantin regarding Plaintiff's Guardian policy or any renewal thereof would have occurred before June 2011. As such, no separate or distinct act involving Dantin or DCI could have occurred after June 2011. Thus, Plaintiff's claims against Dantin and DCI, which were asserted more than seven (7) years after the termination of Dantin's contract with Guardian, remain perempted, even assuming annual renewal of Plaintiff's Guardian policy.

The Court therefore finds that there is no reasonable basis to predict that Plaintiff could recover from either Dantin or CDI, as all potential claims against them are perempted under La. R.S. 9:5606(A).

### III. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, Plaintiff's Motion for Remand (R. Doc. 12) is **DENIED** and Plaintiff's claims against Defendants Chris Dantin and Chris Dantin, Inc. are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 23rd day of September, 2020.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

Document Number: 61741